**R. H. FULTON, d/b/a R. H. Fulton, Contractor, Plaintiff,**

v.

**SOUTHERN PACIFIC COMPANY, Chicago, Rock Island and Pacific Railroad Company, and Soo Line Railroad Company, Defendants.**

**Civ. No. 1517.**

United States District Court, W. D. Missouri, St. Joseph Division.

Dec. 3, 1970.

Anderson, Edwards & Warnick, Lubbock, Tex., Thompson, Knight, Simmons & Bullion, David Ford Hunt and Holloway & Hunt, Dallas, Tex., Strop, Watkins, Roberts & Hale, St. Joseph, Mo., Sprinkle, Carter, Larson & Hanna, Kansas City, Mo., for plaintiff.

Underwood, Wilson, Sutton, Heare & Berry, Amarillo, Tex., Shannon, Gracey, Ratliff & Miller, Fort Worth, Tex., James, McCanse & Larson, Kansas City, Mo., for Chicago, Rock Island & Pacific.

Sprague, Wilcox & Houts, St. Joseph, Mo., Watson, Ess, Marshall & Enggas, Kansas City, Mo., for Southern Pacific Co.

Brown, Douglas & Brown, St. Joseph, Mo., for Soo Line Railroad Co.

MEMORANDUM AND ORDER OVERRULING MOTION OF DEFENDANT SOO LINE RAILROAD COMPANY TO QUASH SERVICE AND TO DISMISS FOR LACK OF JURISDICTION.

DUNCAN, Senior District Judge.

Plaintiff, a resident and citizen of the State of Texas, instituted this suit on November 22, 1968, in the Northern District of Texas, Lubbock Division against the Southern Pacific Company, a Delaware corporation, with its principal place of business in the State of California, and the Chicago, Rock Island & Pacific Railroad Company, also a Delaware corporation, with its principal place of business in Illinois, to recover damages for the loss and damage of certain construction equipment valued at more than $750,000.00, while in transit and in the possession of the defendant Chicago, Rock Island & Pacific Railroad Company.

The case was transferred to the St. Joseph Division of the Western District of Missouri, the district in which the damage is alleged to have occurred, upon motion of the defendant Chicago, Rock Island & Pacific Railroad Company, under the provisions of Title 28 § 1404(a) U.S.C.A.

On April 28, 1970, the plaintiff filed an Amended Complaint joining the Soo Line Railroad Company, a Minnesota Corporation, with its principal place of business in Minneapolis, Minnesota, as a party defendant. Service was had on it on May 11, 1970, by serving R. J. Baker, its treasurer, in the State of Minnesota, under the Missouri Long Arm Service Statute, 506.500, 506.510, 351.633 R.S. Mo., V.A.M.S., and under Rule 4 Fed.R. Civ.P.

A motion to quash the service was filed by the Soo Line on the ground that it did not do business in the State of Missouri, and therefore, it was not properly served under the Long Arm Service Statute of Missouri.

On August 7, 1970, following a conference between the court and counsel, the plaintiff filed a Second Amended Com-

plaint, and service was again had upon the Soo Line in the State of Minnesota under the above numbered statutes. The Second Amended Complaint alleged that the Soo Line maintained an office in St. Louis, Missouri, one in Overland Park, Kansas, and one in East St. Louis, Illinois. Also that it made "daily business calls in the State of Missouri for purposes of soliciting business and performing * * * duties in connection with the shipment of equipment and materials by Soo Line Railroad Company as originating carrier through the State of Missouri." The defendant Soo Line again filed motion to quash on the ground that it had not been properly served under the statutes cited above.

Affidavits were filed by the defendant Soo Line stating that although it maintained an office in the State of Missouri, and one in the State of Kansas, that no contracts were made in the State of Missouri. The affidavits clearly show that no contract or any other negotiation of any kind or character has been made in the State of Missouri, in connection with the shipment that is the basis of the controversy in this case.

The Second Amended Complaint further states that the defendant Soo Line has committed a tort in the State of Missouri and is therefore amenable to service under the Missouri Long Arm Service Statute. Specifically, the plaintiff alleges that the Soo Line "for good and valuable consideration agreed to prepare said machinery for shipment in a manner that would enable it to be safely delivered by the terminating carrier" and that as a result of the negligence of the defendant Soo Line Railroad the plaintiff's equipment was lost, damaged and destroyed. The specific acts of negligence of the Soo Line directly causing the damages are alleged as follows:

"1. In improperly supervising the loading of Plaintiff's equipment.

2. In failing to properly load, tie and tighten Plaintiff's equipment.

3. In failing to make a proper inspection of Plaintiff's equipment either before or after issuing its bills of lading, and before permitting said equipment and machinery to commence transportation.

4. In failing to maintain a proper lookout for instructions, warnings and other advice of Plaintiff given either orally or in writing, or contained upon Plaintiff's equipment.

5. In failing to insert a safety bolt into Plaintiff's equipment.

6. In failing to attach a 'wide load' sign in connection with the shipment of Plaintiff's equipment.

7. In failing to properly advise other carriers of a wide load.

8. In failing to see if the width of the bridges through which Plaintiff's equipment would pass was sufficient.

9. In failing to advise Plaintiff of the minimum clearance on bridges through which his equipment would pass.

10. In not contacting the appropriate supervisors for aid or assistance in loading, tying and inspecting Plaintiff's equipment."

Section 506.500 R.S.Mo., V.A.M.S. provides that:

"Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any such acts:

(1) The transaction of any business within this state;

(2) The making of any contract within this state;

(3) The commission of a tortious act within this state;

(4) The ownership, use, or possession of any real estate situated in this state; * * *.

2. Only causes of action arising from the acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section."

In view of the provisions of paragraph 2 of the Long Arm Statute, it is apparent that the complaint must allege one or more of the enumerated grounds in connection with the facts giving rise to the present controversy in order for the statute to be applicable.

On November 4, 1970, the court held a hearing on defendant Soo Line's motion to quash service. At that hearing Mr. Clarence M. Knutson, of Thief River Falls, Minnesota, car foreman for the Soo Line Railroad at Thief River Falls, testified that there were ten cars loaded with the plaintiff's equipment at Thief River Falls, and that the plaintiff loaded pipeline equipment on cars that were spotted along "Apple Spur". Mr. Knutson further testified that plaintiff's employees—

"shoved up some dirt for a ramp to go onto the cars, and they worked the cars up on the flats, * * * and they moved their machinery on top of the cars and down to the end of the cars, and after that, why, they blocked them with material they had and used—they had cabling that they used, this was five-eighths cable, and tightened down and pulled it up tight so that it was all secured."

In describing the load he stated that the "width was wider than the ten foot four or ten foot six width of the car, so that it would be considered a wide load." Mr. Knutson further testified on direct examination as follows:

"Q. Now, did you see anything wrong with the way the machinery had been loaded, other than the extra width?

A. No.

Q. Did the Soo Line in any way have anything to do with the loading, other than the subsequent inspection you have told the Court about?

A. No, it didn't."

On cross-examination Mr. Knutson testified:

"Q. And it is true, is it not, that you gave the employees of Mr. Fulton instructions with regard to how the loading was to be done?

A. Well, if I seen something wrong that I wouldn't accept, why, I told them about it, yes.

Q. Well, didn't you at the outset have occasion to refer to the railroad manual to see how the equipment was to be positioned and how it was to be cabled?

A. Yes, I did.

Q. And didn't you advise the Fulton employees with respect to the wording in that railroad manual?

A. Well, I advised them that this would have to be what—the things that they would have to do to be acceptable, yes.

Q. And you also gave them instructions with respect to how many cable clamps to use?

A. Yes, I did.

Q. And you also gave them instructions with respect to how the cable was to be tied?

A. Well, there was one instance where they were doing it so that it wouldn't pull the load in the proper sequence or proper way so that the car—the machine could have a tendency to shift.

Q. All right.

A. And I had that changed.

Q. You do recall, then, that on one or more occasions, the Fulton employees were loading the equipment in one way and you gave them instructions with respect to loading it in another way?

A. Yes.

Q. And they abided with your instructions and made the change?

A. Yes, but—that's correct.

Q. Well, you had the final say-so on whether or not the equipment was tied down and positioned so that the Soo Line was willing to assume the responsibility of the equipment on their line as originating carrier?

A. Yes.

Q. And that was the occasion for your giving the instructions?

A. Yes.

Q. And you also gave instructions with respect to the positioning of the equipment on the various flatcars, did you not?

A. No."

Melvin Allen of Flagstaff, Arizona, an employee of the plaintiff, testified:

"Q. And tell the Court the nature of that initial contact, if you would, please, sir?

A. Well, after we determined that we would ship on the Soo Line, the contact I had with Mr. Knutson was to talk to him about the tying down of the equipment, how the equipment would be tied down on the cars, and at that time he got his book and we went through it, * * *".

"Q. In connection with the loading of Mr. Fulton's equipment, did Mr. Knutson give any instructions or any advice with respect to how the positioning was to be done or how the equipment was to be loaded?

A. Well, yes. He gave instructions as to how it should be tied down and, of course, you know—it should be positioned on the car so it wouldn't exceed the capacity of the car and all the weight wouldn't be on one end, and, of course, how the cables would be secured and so forth.

Q. Were there occasions when you would have the equipment positioned or loaded in a certain way and Mr. Knutson would require Mr. Fulton's employees to do it in another way?

A. That's right."

John Caraway, another employee of the plaintiff, testified that a part of his duties was to oversee the loading, and that he talked with Mr. Knutson about it. In describing the loading supervision, he stated:

"Well, he (referring to Mr. Knutson) told me how the cable was to be tied, and that's the way I done it. He told me how to put the blocking on it and that's the way we did it. And then the tractors had to be positioned on the car to where the weight was evenly distributed, and they had to be positioned on the car to where there was as much width hangover on each side."

There is no contention that the Soo Line has transacted any business in this state, that it has made any contract in this state, or that it owns, uses or possesses any real estate in this state. Plaintiff is limited therefore to the single ground that a tortious act was committed within the state. The defendant's motion to quash alleges:

"That this Court lacks jurisdiction over the person of this defendant in respect of the claim made in the Plaintiff's Second Amended Original Complaint herein for the reason that the exercise of jurisdiction by this Court in this action will deprive defendant Soo Line Railroad Company of liberty and property without due process of law in violation of Section 1 of Amendment XIV of the Constitution of the United States * * *."

The undisputed facts reveal that the plaintiff was the owner of a large amount of pipeline equipment which was located at Thief River Falls, Minnesota, and the defendant Soo Line Railroad Company was contacted in the State of Minnesota for the purpose of providing for the shipment of the equipment from Thief River Falls to Texas and other points, and that arrangements were made to load the

equipment on cars furnished by the defendant Soo Line.

After the cars were loaded the Soo Line delivered them to the Minneapolis, Northfield and Southern Railroad at Minneapolis, Minnesota, and from there they were transported and delivered by that railroad to the Chicago, Rock Island and Pacific Railroad Company at Northfield, Minnesota. The shipment sustained its damage while being transported by the Chicago, Rock Island and Pacific Railroad near Trenton, Missouri.

It is plaintiff's contention that the cargo shifted and that this shifting was the result of the negligence of employees of the Soo Line in the respects alleged in his complaint.

Unless some tortious act was committed by the defendant Soo Line Railroad Company in the State of Missouri, it would not be subject to the jurisdiction of this court. It is the contention of the plaintiff that the Soo Line was guilty of negligence, that is, that it committed a tort in the manner of loading and securing the load in Thief River Falls, Minnesota, which resulted in the shifting of the load while in transit in the State of Missouri.

We have not been cited, nor have we found any cases dealing with the question of a railroad company being held subject to service under the Long Arm Service Statute for damages resulting from alleged negligence in loading cargo outside the State of Missouri, which later shifted resulting in damage within this state.

A related question however, has been before the courts in the application of long arm service statutes to products liability actions. State ex rel. Deere and Company v. Pinnell, 454 S.W.2d 889 (Mo. Sup.Ct.1970); Aftanase v. Economy Baler Company, 343 F.2d 187 (8th Cir. 1965). In those cases it was held that where the act of negligence was committed in the state where the product was manufactured, but damage did not result until after the product had been transferred to the state where the injury oc-

curred, the latter state's long arm service statute was applicable.

We think the same rule can be applied to the facts here presented. It is our conclusion that if the Soo Line Railroad, the initial carrier, was guilty of some tortious act of negligence in the manner in which it supervised the loading of the freight in Minnesota and that damage did not occur or result until the shipment was in the State of Missouri, that these facts are sufficient to bring the defendant Soo Line within the provisions of the Missouri Long Arm Service Statute.

Accordingly, the motion of the defendant Soo Line Railroad Company to quash service and to dismiss for lack of jurisdiction is hereby overruled.

It is so ordered.