**Jere LUSTIG, Plaintiff-Respondent,**

v.

**U. M. C. INDUSTRIES, INC.,
Defendant-Appellant.**

No. 40391.

Missouri Court of Appeals,
Eastern District,
Division One.

May 4, 1982.

Motion for Rehearing and/or Transfer
Denied June 18, 1982.

Application to Transfer Denied
Sept. 13, 1982.

J. L. Pierson, Lewis, Rice, Tucker, Allen & Chubb, St. Louis, for defendant-appellant.

J. B. Carter, Carter & Becker, Clayton, for plaintiff-respondent.

STEPHAN, Presiding Judge.

Respondent lessor brought an action for statutory waste against appellant, its tenant. After eight days of trial to the jury and a verdict in favor of respondent, judgment was entered against the appellant for treble damages in the amount of $95,250.00. This is an appeal from that judgment. We reverse and remand for new trial.

Appellant leased a factory building and parking area from respondent for ten years beginning August 15, 1963. Appellant operated its manufacturing business at the leased premises until September 1, 1971, when it vacated (except for certain equipment left for storage) and gave possession to its subtenant, Maplewood Warehouse, Inc. Maplewood then used the premises as a warehouse for the remainder of the ten year lease period. Appellant continued to make rent payments while Maplewood was in possession and the lease was in effect.

Respondent sued appellant after the lease ended in August 1973, listing in its petition sixteen items of alleged damage to the building and parking lot. Respondent asserted that such damage constituted waste under § 537.420, RSMo 1969,[1] and prayed for treble damages, alleging that the waste was wantonly committed.[2] Certain of the alleged injuries occurred during appellant's occupancy and others happened while Maplewood was in possession. At trial respondent presented testimony from four witnesses, including two owners of the property, and numerous exhibits were introduced

---

1. All future statutory references will be to RSMo 1969 unless otherwise indicated.

Section 537.420 provides: "If any tenant, for life or years, shall commit waste during his estate or term, of anything belonging to the tenement so held, without special license in writing so to do, he shall be subject to a civil action for such waste, and shall lose the thing wasted and pay treble the amount at which the waste shall be assessed."

2. Section 537.490: "If in any action for waste, the jury find that the waste was wantonly committed, judgment shall be entered for three times the amount of the damages assessed."

into evidence, including the lease between respondent and appellant and certain photographs. Two witnesses testified for appellant. After the conclusion of the evidence the jury was instructed regarding the law. We reverse and remand because of the damage instructions given the jury. We also address several of the many points raised by appellant because of the likelihood that the same problems will arise on retrial.

■ The jury was instructed that, if they found for plaintiff, they must award plaintiff such sum as will fairly and justly compensate plaintiff for any damages plaintiff sustained as a direct result of the occurrences mentioned in the evidence. This is MAI 4.01 Damages-Personal and Property. Appellant correctly points out that the proper measure of damages in an action for waste is the difference in value of the freehold estate or inheritance before and after the waste, *First National Realty & Loan Co. v. Mason*, 185 Mo.App. 37, 171 S.W. 971, 972 (1914), and contends that it was error to give MAI 4.01 in this case. We agree.

When the only damage is damage to property the correct instruction to give is MAI 4.02. That instruction charges the jury, if it finds in favor of plaintiff, to award the plaintiff the difference between the fair market value of the property before and after the damage. To give MAI 4.01 in a property-damage-only case has been held to be prejudicial error warranting a new trial. *Wright v. Edison*, 619 S.W.2d 797, 801 (Mo.App.1981); *Sands v. R. G. McKelvey Building Co.*, 571 S.W.2d 726, 730, 731 (Mo.App.1978). So it is here.

■ In an action for waste, "where the damage is small in comparison to the total value of the property and is readily ascertainable and where the verdict is not excessive, the amount of such damage may be arrived at by determining the cost necessary to restore the property to its former condition." *Helton v. City of St. Joseph*, 340 S.W.2d 198, 199 (Mo.App.1960). See *Matulunas v. Baker*, 569 S.W.2d 791, 796–797 (Mo.App.1978); *DeArmon v. City of St. Louis*, 525 S.W.2d 795, 800 (Mo.App.1975). Such circumstances are contemplated in the

Notes on Use (1980 Revision) and the Committee's Comment following MAI 4.02, 3d Ed., and a modified form of the instruction is provided which sets the "cost of repair" as the measure of damages rather than the diminution of value. The trial court may determine upon retrial that the evidence warrants this modified instruction.

■ Appellant correctly claims that an additional error occurred when the court instructed the jury to answer the single question: "Was the waste committed by Defendant a wanton act or acts?" The jury answered "yes" and the court trebled the amount of damages assessed for all of the items of damage in accordance with § 537.-490. Damages that are the result of waste wantonly committed, and only those damages, can be trebled under § 537.490. Whether an act is wanton depends on the state of mind of the actor when the act is committed. The mental state required for a finding of wantonness has been described by Missouri courts in several ways. A wanton act is regarded as a wrongful act done intentionally, on purpose, in malicious disregard of the rights of others, or in reckless disregard of the rights of others. *Brisboise v. Kansas City Public Service Co.*, 303 S.W.2d 619, 623 (Mo. banc 1957); *Evans v. Illinois Central Railroad Co.*, 289 Mo. 493, 233 S.W. 397, 400 (banc 1921); *Voss v. American Mutual Liability Insurance Co.*, 341 S.W.2d 270, 279 (Mo.App.1960); *Trauerman v. Lippincott*, 39 Mo.App. 478, 488 (1890). See also *Gonnella v. Tucker*, 625 S.W.2d 211, 213 (Mo.App.1981). In the case at bar, sixteen separate instances of waste were alleged. Absent an allegation or attempt to show that these sixteen instances were the product of a common course of action with a single underlying state of mind, it was improper for the court to lump the separate wantonness issues into a single instruction. On retrial, if the evidence so warrants, the jury should be required to treat each item of damage separately, fixing the amount and determining whether the particular act of waste was committed wantonly. Cf. *Breece v. Jett*, 556 S.W.2d 696, 711[13] (Mo.App.1977); *Kavanaugh v.*

*Donovan,* 186 Va. 85, 41 S.E.2d 489, 494[17] (Va.1947).

We now address certain of the other issues raised by appellant which are likely to recur upon retrial.

Instruction No. 4 given by the trial court to the jury reads as follows: "The term 'waste' as used in these instructions means the failure of a tenant to exercise ordinary care in the use of the leased premises or property, which thereby causes material and permanent injury thereto over and above ordinary wear and tear."[3]

■ Appellant urges that this instruction was erroneous because it failed to distinguish so-called "voluntary" or "commissive" waste from "permissive" waste. "Permissive" waste consists of mere neglect or omission to prevent an injury to the landlord's reversion or inheritance, such as allowing a structure to deteriorate for lack of repair, permitting a stranger to injure the property, or otherwise failing to perform a duty to protect the inheritance. "Voluntary" or "commissive" waste consists of some direct injury to the property committed by the tenant in possession, such as pulling down a structure or cutting down trees. 3A Thompson on Real Property § 1271 (1981). In appellant's view, permissive waste is not actionable under § 537.420, which governs a tenant who "shall *commit* waste," (emphasis added); nor can § 537.490 apply, since that section requires that the waste be "wantonly *committed.*" (Emphasis added.)

In England, a prohibition of waste which existed at common law for certain estates was expanded by the Statute of Gloucester in the thirteenth century, 6 Edw. I, ch. v (1278), to apply to tenants for life or years, and liability existed for permissive waste as well as voluntary waste. 4 Thompson on Real Property § 1852 (1979); Kirchwey, Li-

ability for Waste I, 8 Columbia L.Rev. 425, 425 (1908). The remedy under the Statute of Gloucester was forfeiture and treble damages. American Law of Property, Vol. V § 20.17 (1952). The rule that tenants were liable for permissive as well as voluntary waste, based on the Statute of Gloucester, was followed in Missouri. *Mason v. Stiles,* 21 Mo. 374, 378 (1855).

In 1855, the Missouri General Assembly enacted statutory waste provisions identical to § 537.420 and § 537.490, set out supra, notes 1 and 2. Ch. 94, §§ 42, 49, RSMo 1855. These statutory provisions resembled the common law in that they applied to tenants for life or years and provided for forfeiture and treble damages. The issue before us is whether these statutes follow the common law in permitting actions for "permissive" as well as "commissive" waste.

No Missouri decision squarely dealing with this issue has been called to our attention, and we have discovered none. There has been, however, some instructive discussion in Missouri since 1855. In *Coale v. Hannibal and St. Joseph R.R. Co.,* plaintiffs in an action for waste failed to show that defendant was a tenant for life or years, and thus " 'within the class of persons who are liable for ... permissive waste.' " 60 Mo. 227, 234 (1875). In *Boefer v. Sheridan,* 42 Mo.App. 226, 229–230 (1890) a tenant from month-to-month was said not to be liable for permissive waste under statute, since the statute only applied to a tenant for life or for years. These two cases support the position that when § 537.420 applies, as in the case of a tenant for years, there is liability for permissive as well as commissive waste.

Appellant argues to the contrary, using principles of statutory construction. He observes that § 537.420 applies to waste done "without special license." Appellant con-

---

**3.** The instruction was supplied by respondent and was based on language found in *Durbin-Durco, Inc. v. Blades Manufacturing Corp.,* 455 S.W.2d 449, 452 (Mo.1970), which did not involve statutory waste. The instruction, which defined waste as the failure to use ordinary care in the use of the leased premises, was given without objection from appellant or the

offer of an alternative. After the verdict the appellant complained for the first time that the instruction did not distinguish commissive waste from permissive waste, and continued its objection in its motion for new trial. By doing so, appellant has preserved its contention for review on appeal by virtue of Rules 70.03 and 78.07.

tends this shows an intent to exclude permissive waste since one would never give a license to be neglectful. We do not agree. The legislature anticipated that a lessor might license some acts which might otherwise constitute commissive waste; it does not follow, however, that other acts or omissions were to be excused from liability under the statute.

Appellant further argues that §§ 537.420 and 537.490 must be construed to control commissive waste only, since they use the verb "commit." This argument attaches too much importance to the similarity between that word and the adjective "commissive." Both active and passive conduct may constitute "commission" under a given statute. For example, § 506.500, RSMo 1978, is a long-arm statute that subjects a person or corporation to the jurisdiction of the courts of this state for *commission* of a tortious act in Missouri. If appellant's suggested rule of construction were applied, the long-arm statute would only encompass active conduct in Missouri. Nonetheless, *negligence* occurring outside the borders of the state that results in an injury occurring in Missouri is the *commission* of a tortious act in Missouri under § 506.500. See e.g. *Fulton v. Southern Pacific Co.*, 320 F.Supp. 45, 50 (W.D.Mo.1970), aff'd. 481 F.2d 326 (8th Cir. 1973), cert. den. 414 U.S. 1040, 94 S.Ct. 540, 38 L.Ed.2d 330.

Appellant has presented no compelling authority or persuasive argument that there is a distinction under §§ 537.420 and 537.490, RSMo, between "commissive" waste and "permissive" waste. We find no reason in the law or public policy to impose such a distinction. An action for injury, whether to real estate or persons, should not stand or fall according to how the conduct resulting in that injury is arbitrarily characterized. See *Missouri Pacific Railroad Co. v. Whitehead & Kales Co.*, 566 S.W.2d 466, 471 (Mo. banc 1978); *Grimm v.*

*Grimm*, 153 Ga. 655, 113 S.E. 91, 92 (1922). We are not persuaded that the legislature meant to distinguish between the two types of waste, and therefore rule the point against appellant.

Appellant also contends that the trial court erred in failing to instruct the jury that appellant could only be liable for waste committed on the property while it was in physical possession of the premises.

Appellant's position that it cannot be held liable for waste allegedly done by its subtenant Maplewood is incorrect. Section 537.420 holds a tenant for life or years liable for waste done "during his estate or term." A tenant for years who gives up possession to a sublessee for a portion of his term remains liable to the lessor or holder of the reversion for acts of waste done by his sublessee. See *Marcellus v. K.O.V. Inc.*, 5 Kan.App.2d 339, 615 P.2d 170, 172 (1980); *Dixie Fire & Casualty Co. v. Esso Standard Oil Co.*, 265 N.C. 121, 143 S.E.2d 279, 283 (1965). Cases cited by appellant regarding the liability of tenants who *assign* their interest are not applicable because of the difference between a sublease, which establishes no privity of contract or estate between the lessor and the sublessee, and an assignment. See *St. Joseph & St. Louis R. Co. v. St. Louis I.M. & S. Ry. Co.*, 135 Mo. 173, 36 S.W. 602, 607 (1896).[4] Since appellant was thus liable to respondent for alleged waste done while its subtenant Maplewood occupied the premises, Maplewood was not an indispensible party required to be joined as a defendant. See Rule 52.04.

The real estate in question was owned by Mr. Lustig as trustee for the benefit of himself and Mr. Greenblatt. Both men testified regarding the value of the leased premises. Because of their interest in the real estate they were not required to be listed as experts under Rule 56.-01(b)(4). That rule refers to facts and opin-

---

**4.** No contention was made that Maplewood was in fact the assignee of appellant and not its subtenant, and it is not necessary to consider the matter sua sponte. It appears, however, that the transfer in question was a sublease, or at least an attempted sublease, since Maple-

wood's term was until August 14, 1973, one day less than appellant's term. Rent was at all times paid by appellant. Also the transaction was consistently referred to as a sublease. See *Employees Consumer Organization, Inc. v. Gormans Inc.*, 395 S.W.2d 162, 166 (Mo.1965).

ions "acquired or developed in anticipation of litigation or for trial" and does not require disclosure of witnesses who have an interest in and knowledge of the subject matter of the trial independent of the litigation. *Missouri Public Service Co. v. Allied Manufacturers, Inc.*, 574 S.W.2d 509, 512 (Mo.App.1978); *Krug v. United Disposal, Inc.*, 567 S.W.2d 133, 135–136 (Mo.App. 1978). An owner of real estate may testify regarding his opinion of its value, even though he is not an expert in such matters, since an owner is presumed to be familiar with the property and its uses; but, if the record shows the owner does *not* have special knowledge, the presumption is overcome and evidence of his opinion of the value of the property should be rejected. *Casada v. Hamby Excavating Co., Inc.*, 575 S.W.2d 851, 854–855 (Mo.App.1978); *Ward v. Deck*, 419 S.W.2d 286, 291 (Mo.App.1967). Lustig, although a resident of Chicago, had knowledge of the premises dating from when the leased building was constructed to the specifications of his client in 1950. He joined with others to purchase the premises in 1952 and negotiated the lease with appellant, accepted monthly rent payments throughout the term of the lease, and corresponded with appellant regarding repairs. It was Lustig who considered the applications of prospective tenants and rejected them because of offered rent or intended use. Such regular and direct involvement with the business use of the property is sufficient to support his opinion, as an owner, of its value.

■ Mr. Greenblatt resided in St. Louis County at all relevant times. Appellants attack his testimony regarding the cost of repair and value of the premises as "hearsay" since he based his opinions on estimates made to him by contractors and re-

pairmen. It can be expected that an owner's opinion, like that of any expert, will to some degree always be based on indirect or "hearsay" knowledge but still be admissible. See *Cotner v. Blinne*, 623 S.W.2d 615, 618 (Mo.App.1981); *State ex rel. State Highway Commission v. Bloomfield Tractor Sales Inc.*, 381 S.W.2d 20, 25 (Mo.App.1964); *United States v. Sowards*, 339 F.2d 401, 402 (10th Cir. 1964); *United States v. 5139.5 Acres of Land*, 200 F.2d 659, 662 (4th Cir. 1952).

■ Mr. Lustig also read to the jury provisions of the lease concerning the appellant's right to sublet the premises and the intended use of the premises, along with letters tending to show respondent violated these provisions. Appellant objected to this evidence on the grounds that it was not relevant to an action for waste.[5] Generally, a lease is relevant to an action for statutory waste to establish the relationship between the parties so as to bring the tenancy within the ambit of the statute. Furthermore, it is logical to consider the expressed intentions of the parties to establish the rights and duties of the tenant and determine whether he has committed waste. The intended use of the premises may be important. See *Sherwood Medical Industries, Inc. v. Building Leasing Corporation*, 527 S.W.2d 407, 411–412 (Mo.App.1975).

■ Clauses in a lease which permit certain alterations by the tenant and allow subletting may be relevant to determine whether waste was done. Cf. *Sherwood Medical Industries*, supra, at 413. Section 537.420 itself allows as a defense the fact that the tenant had a "special license in writing ... to do" waste, which presumably could be proved by a portion of the lease.[6] Evidence to show that alleged

---

5. The entire lease was put into evidence as an exhibit without objection from appellant. It was not until the witness began to read from the lease that objections regarding relevancy were made. The general rule is counsel must make objections as soon as possible, before the evidence is admitted if feasible, to preserve the objection for review on appeal. *Pickett v. Stockard*, 605 S.W.2d 196, 199 (Mo.App.1980). After evidence is received, however, later testi-

mony may disclose the purpose of the evidence and a ground for objection, at which time an objection is timely. *Young v. Dueringer*, 401 S.W.2d 165, 168 (Mo.App.1966).

6. Appellant itself points to a portion of the lease that it has asked this court to exclude from evidence, and claims a special license in writing to excuse certain alleged waste. We do not address this point since it appeared for the

waste was committed or allowed willfully, with knowledge that it was contrary to terms of the lease, also may be relevant to show wanton behavior.

Although some portions of a lease may have little or nothing to do with the tenant's duty to avoid or prevent damage to the premises, we see no reason to treat a lease differently from other evidence which may tend to prove or disprove factual issues in an action for statutory waste. Similarly, letters between the parties regarding the lease may be relevant to show knowledge and intent necessary to prove wantonness.

Appellant objects to the admission of certain photographs on the ground that they were made on dates too remote from the beginning and end of the lease term. So long as a witness familiar with the property testifies that a photograph accurately represents the scene it purports to portray, the photograph is admissible. *State ex rel. State Highway Commission v. Eilers*, 406 S.W.2d 567, 570–571 (Mo.1966). Whether a photograph is sufficiently authenticated is a preliminary question for the trial court. *Weber v. Missouri-Kansas-Texas R.R. Co.*, 519 S.W.2d 307, 313 (Mo.App. 1975).

Reversed and remanded for a new trial.

DOWD and STEWART, JJ., concur.

first time in appellant's brief to this court. Rule 78.07; *Bethell v. Porter*, 595 S.W.2d 369, 375 (Mo.App.1980). See also *Davis v. Clark*, 40 Mo.App. 515, 521–522 (1890) ("special license in writing" is a defense to be established by defendant).