**Gail BUSSELL, Plaintiff–Appellant,**

**v.**

**Betty LEAT and Eugene Rojek, Defendants–Respondents.**

**WD 40956.**

Missouri Court of Appeals, Western District.

Oct. 10, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 28, 1989.

Application to Transfer Denied Jan. 10, 1990.

Stanley L. Wiles, Kansas City, for plaintiff-appellant.

Patrick K. McMonigle, Russell J. Greenhagen, Dysart, Taylor, Penner, Lay & Lewandowski, Kansas City, for defendants-respondents.

Before GAITAN, J.P., and
MANFORD and ULRICH, JJ.

ULRICH, Judge.

Appellant Gail Bussell appeals from the judgment entered on jury verdict for defendant Betty Leat. The trial court directed a verdict in favor of defendant Eugene Rojek at the conclusion of the plaintiff's case, which Ms. Bussell does not directly appeal. The judgment is affirmed.

Gail Bussell liked horses and had ridden them for at least twenty-three years. She purchased a horse in 1985 and rode it weekends and sometimes during the week. She attended horse auctions and bought and sold saddles and tack.

Gail Bussell met Betty Leat at a horse auction. Betty Leat introduced Gail Bussell to George Anderson. Ms. Bussell later drove Mr. Anderson to a horse auction in Concordia, Missouri, where Mr. Anderson bought two horses. George Anderson took the horses to property leased by Betty Leat and Eugene Rojek. Ms. Leat invited Gail Bussell to see the horses that Mr. Anderson bought, and Ms. Bussell drove George Anderson to the property on April 13, 1986, to see the horses.

Before Ms. Bussell and Mr. Anderson arrived at the property where the horses were kept, Ms. Leat rode one of the horses purchased by George Anderson. As she was dismounting the horse, she fell and injured her right heel and coccyx. She did nothing to redress her injuries, apparently believing them to be minor.

When Gail Bussell and George Anderson arrived at the property, Betty Leat, Eugene Rojek, and other people were present. They all ate dinner and visited with each other for several hours. George Anderson then rode one of the two horses he had purchased, and Gail Bussell was asked if she wanted to ride the other horse purchased by Mr. Anderson. Ms. Bussell mounted the horse, and the horse reared and fell on top of her. She was injured and was transported to the Lee's Summit Hospital, where she remained for several days before she was taken to the Trinity Lutheran Hospital in Kansas City. Ms. Leat and others accompanied Ms. Bussell to the Lee's Summit Hospital, and while there, Ms. Leat's right ankle and coccyx were x-rayed.

Gail Bussell sued Betty Leat and Eugene Rojek alleging that both defendants negligently made false statements that the horse that later fell on her had a gentle nature which induced her to ride it. After Ms. Bussell presented evidence and rested her case, the court sustained defendant Rojek's motion for a directed verdict. Defendant Leat introduced evidence, and plaintiff Bussell again testified in rebuttal. Ms. Bussell changed her theory of recovery and, with court approval, submitted her case against Ms. Leat to the jury on a theory of fraudulent misrepresentation. She contended that Ms. Leat fraudulently misrepresented to her that the horse was placid, gentle natured, and not dangerous, causing her to ride it, and resulted in her injuries when it reared and fell on her. The jury found in favor of Ms. Leat.

Gail Bussell alleges several points on appeal. She contends that the trial court erred by (1) restricting cross-examination of Betty Leat, (2) refusing to vacate its order directing the verdict in favor of Eu-

gene Rojek and not reinstating Mr. Rojek as a defendant when she changed her theory of recovery, (3) refusing to permit her to testify in person and the treating chiropractor by video deposition that she was unable to obtain additional chiropractic treatments because she could not afford them, (4) refusing to permit testimony about the condition of defendants' premises where the horse that fell on her was kept, (5) refusing to permit her attorney to ask the venire during voir dire whether it could award her $300,000, (6) refusing to permit her attorney forty minutes for closing argument, (7) allowing defendant's medical expert witness to testify about her preexisting mental condition, and by (8) refusing to permit her attorney to cross-examine defendant Betty Leat about George Anderson's availability as a witness in Betty Leat's behalf.

 Respondents Eugene Rojek and Betty Leat filed a motion with this court to strike points five through eight of appellant's brief, contending that these points are not preserved for appellate review because they were not timely filed. The trial court's judgment was entered on August 12, 1988. Rule 78.04 requires that entry of judgment shall be the date of the verdict and that a motion for a new trial must be filed within fifteen days after entry of judgment on a jury verdict. Therefore, Gail Bussell had through August 27, 1988, in which to file a motion for a new trial expressing the reasons the trial court should grant her a new trial. Contentions not raised in a motion for a new trial are not preserved for appellate review. *Overfield v. Sharp*, 668 S.W.2d 220, 222 (Mo. App.1984). Gail Bussell filed her motion for a new trial on August 15, 1988, and her first amended motion for a new trial on August 22, 1988. Ms. Bussell raised points five and six in her timely first amended motion, and they are preserved for review. Ms. Bussell filed a second amended motion for a new trial on September 14, 1988, after the deadline for filing a motion for a new trial, which preserved nothing not previously preserved for appellate review. *State v. Berry*, 609 S.W.2d 948, 951 (Mo. banc 1981).

Gail Bussell's second amended motion for a new trial asserted for the first time points seven and eight of her appellate brief. Absent plain error resulting in "manifest injustice or a miscarriage of justice" as provided by Rule 78.08, an issue not preserved in a timely motion for new trial is not preserved for appellate review. *Overfield*, 668 S.W.2d at 222; *see also* Rule 84.13(c). The court reviews points seven and eight for plain error.

 Point seven contests the qualifications of defendant Leat's medical expert, Dr. Victoria Cook, to testify about the plaintiff's mental state when examined by Dr. Cook and when younger.[1] Dr. Cook testified by video deposition that she conducted a physical examination of plaintiff Bussell, administered several tests to the plaintiff, and reviewed records of the plaintiff's medical history. Included among the tests Dr. Cook conducted was the Minnesota Multiphasic Personality Inventory (MMPI), a test to evaluate a person's psychological state. The court permitted Dr. Cook's testimony about the administration of the MMPI to Ms. Bussell and her evaluation of the test, which, summarizing, included statements that Ms. Bussell may have had "borderline" psychological problems when she was younger, but that she demonstrated no evidence of any severe psychiatric or psychological problems when tested by Dr. Cook.

The trial court has broad discretion to determine the qualifications of experts and the admissibility of their expert opinions. *Huelster v. St. Anthony's Medical Center*, 755 S.W.2d 16 (Mo.App.1988); *Pfeffer v. Kerr*, 693 S.W.2d 296 (Mo.App.1985). Dr. Cook is a medical doctor licensed to practice medicine in Missouri and other states, specializing in emergency medicine and trauma surgery. Her medical school training included psychiatry rotations. Her

---

**1.** Dr. Roman Enriquez, an internist, apparently testified by video tape deposition that he conducted tests of the plaintiff to determine if she had suffered brain damage when the horse fell on her. The court does not have the benefit of a transcript of Dr. Enriquez's deposition which was presented at trial. It was not filed as a part of the record before the court.

training in emergency medicine included responding to patients with emergency psychiatric problems. She completed a "mini residency" in work fitness and disability evaluation, about one-seventh of which concerned psychological aspects of chronic disability pain and evaluation of MMPI test results. She possesses a bachelor of arts degree in clinical psychology. While in undergraduate school, she studied the administration and evaluation of the MMPI test. The court's recognition of Dr. Cook as an expert qualified to testify about the administration and evaluation of the MMPI test to the plaintiff did not prejudice the substantial rights of plaintiff Bussell, and did not result in manifest injustice or the miscarriage of justice.

■ Point eight alleges that the court erred by sustaining defendant Leat's objection to appellant's question inquiring on cross-examination whether Ms. Leat had an opportunity to see and subpoena George Anderson to appear at the trial and testify. Plaintiff Bussell did not make an offer of proof. The court's sustention of defendant Leat's objection did not prejudice the plaintiff's substantial rights and it did not result in manifest injustice or the miscarriage of justice.

Points seven and eight of Gail Bussell's appellate brief were not preserved by appellant in a timely motion for a new trial, and neither identifies plain error. Rule 84.13(c). The court declines to consider points seven and eight.

■ Point one alleges that the trial court erred by sustaining defendants' objection to plaintiff's question asking Betty Leat on cross-examination what parts of her body were injured when she fell while dismounting a horse the same day a horse fell on Ms. Bussell injuring her.[2] Ms. Leat testified earlier during direct and cross-examination that her right heel and coccyx were injured by the fall and later her heel was X-rayed at the Lee's Summit Hospital. The court, sustaining defendant Leat's objection, stated that the question inquired of a collateral matter. Later, during the cross-examination of Ms. Leat, Ms. Bussell's attorney again inquired about injuries Ms. Leat sustained from her fall while dismounting a horse on the date of Ms. Bussell's accident. Ms. Leat responded to her opponent's questions without objection.

Respondent Leat testified during direct and cross-examination that her right heel and coccyx were injured and examined at the Lee's Summit Hospital. Apparently, plaintiff's attorney again attempted by his unpermitted question to elicit from defendant Leat a response inconsistent with her failure during her deposition to state that her coccyx was injured when she fell. Impeachment by prior inconsistent statements is permissible, but the trial court has considerable discretion regarding the extent of cross-examination, including the prevention of repetitive or harassing interrogation and to limit attempts to elicit irrelevant information. *State v. Hyde*, 735 S.W.2d 746, 747 (Mo.App.1987); *State v. Harris*, 669 S.W.2d 579, 581 (Mo.App.1984). The question was collateral to the issues being tried, and the court did not abuse its discretion by sustaining the objection. However, defendant Leat responded to plaintiff Bussell's redundant inquiry later during cross-examination, and the plaintiff used the witness' deposition to impeach her. Point one is without merit and is denied.

Appellant Bussell contends as point two that the court erred by refusing to reinstate defendant Rojek after directing a verdict in his favor at the close of the plaintiff's case. After the court entered the directed verdict for defendant Rojek, Ms. Bussell wanted to submit the case against defendant Rojek to the jury on a new theory of recovery. Instead of alleging that the defendants negligently made false statements about the horse that induced her to ride it to her detriment as she had pleaded, Ms. Bussell contended for the first time that the defendants made fraudulent misrepresentations to induce her to ride the horse. The court permitted the plaintiff to amend her theory and to submit her case against Ms. Leat to the jury on a theory of

**2.** Testimony conflicted whether the horse ridden by defendant Leat before plaintiff Bussell arrived was the same horse later ridden by Ms. Bussell that reared and fell on her.

fraudulent misrepresentation. The court refused to set aside the directed verdict in favor of defendant Rojek and to reinstate him as a defendant.

■ Plaintiff Bussell does not appeal from the court's order entered pursuant to Rule 72.01 directing a verdict in favor of defendant Rojek at the close of plaintiff's case. She appeals the refusal of the court to reinstate Mr. Rojek as a party defendant after the court entered the directed verdict. The appellant cites no precedent recognizing the court's authority to vacate its order directing the verdict, and the court finds no cases directly in point. The Missouri Supreme Court stated in *State ex rel. Schweitzer v. Greene*, 438 S.W.2d 229, 232 (Mo. banc 1969), that "a trial court should be permitted to retain control of every phase of a case so that it may correct errors, or, in its discretion, modify or set aside orders or judgment until its jurisdiction is extinguished by the judgment becoming final and appealable." Therefore, logic persuades that before the trial is concluded, the trial court has discretion to vacate, correct, amend, or modify its own order directing the verdict in favor of a party and to reopen the case.

■ Appellant Bussell contends by inference that the trial court permitted her to amend her theory of recovery against both defendants Leat and Rojek and then erred by not vacating its order directing the verdict in favor of defendant Rojek to permit her to submit her case to the jury against Mr. Rojek on the new theory of recovery. Plaintiff Bussell's perception is erroneous. While the trial court permitted the plaintiff to submit her cause to the jury against defendant Leat on a new theory of fraudulent misrepresentation, the court, by declining to set aside its order directing the verdict in favor of defendant Rojek did not permit the plaintiff to amend her theory of recovery against Mr. Rojek.

■ No plaintiff has an absolute right to amend his theory of recovery after he has presented evidence and rested his case. A plaintiff's motion to vacate a directed verdict in favor of a defendant because the plaintiff wishes to submit his cause to the jury on a new theory of recovery is an appeal to the trial court's discretion. Although pleadings, and, therefore, theories of recovery can be amended to conform to the evidence presented during trial, *East v. Landmark Central Bank & Trust Co.*, 585 S.W.2d 222, 225–26 (Mo.App.1979); Rule 55.33; the appellant has failed to identify what evidence of defendant Rojek's conduct justified changing the pleadings and the theory of recovery against him and, therefore, she has failed to identify evidence demonstrating that the trial court abused its discretion by not setting aside the directed verdict and permitting the plaintiff to submit her case against Mr. Rojek on a new theory of recovery. The trial court did not abuse its discretion when it denied appellant Bussell's motion to set aside its order directing the verdict in favor of Mr. Rojek. Point two is denied.

■ Ms. Bussell alleges as point three that the court's refusal to permit her to testify in person and the treating chiropractor by video recorded deposition that the plaintiff could not afford additional needed chiropractic treatments was error. During plaintiff's direct examination, her attorney approached the bench and said, "I don't want to get into trouble again. I want to ask—I want to get into the area about her going to Dr. Fore and not being able to continue treatment because of finance. Am I allowed to get into that area?" The court responded, "Absolutely not." No offer of proof was made. A party desiring to preserve as an issue the exclusion of evidence bears the burden to make an offer of proof where feasible to do so. *City of Kansas City v. Johnson*, 679 S.W.2d 328, 332 (Mo.App.1984), (citing *State v. Callahan*, 526 S.W.2d 59, 61 (Mo.App.1975)). The failure to make an offer of proof requires reviewing authority to speculate on what the evidence might have been. Ms. Bussell was not asked a question about her inability to pay for additional treatment and an offer of proof was not made. The appellant failed to preserve the issue, and the court declines to consider point three.

■ The court precluded testimony about the conditions of the premises where the plaintiff was injured. The appellant contends as point four that the court's decision deprived the jury from knowing the conditions of defendants' residence and that the defendants kept "extremely undernourished animals where they reside." Such information could have reduced the defendants' credibility with the jury, the plaintiff says. The plaintiff made no offer of proof, and the record does not even provide this court with an expected response to the question.[3]

A fact is relevant if it tends to prove or disprove a fact in issue or corroborates evidence which is relevant and which bears on the principal issue. *Lawson v. Schumacher & Blum Chevrolet, Inc.*, 687 S.W.2d 947, 951 (Mo.App.1985). Relevancy is that relationship between the offered fact and fact in issue to such a degree that the truth of the offered fact makes probable the existence of the fact in issue. *Id.* The trial court is granted broad discretion in admitting or rejecting evidence on relevancy grounds. *Missouri Commercial Inv. Co. v. Employers Mutual Casualty Co.*, 680 S.W.2d 397, 402 (Mo.App.1984). The appellant does not allege that the conditions of the premises where the horse was kept caused or affected either the horse's fall or her resultant injury. The question was asked to solicit a response that plaintiff's attorney believed would negatively affect defendants' credibility with the jury. The expected response, whatever it may have been, reasonably could not have tended to prove or disprove a factual issue. The trial court did not abuse its discretion. Point four is denied.

■ Ms. Bussell alleges as point five that the court committed reversible error by precluding her attorney from asking the veniremen during voir dire whether they knew of any reason that they could not award the plaintiff $300,000. Apparently, the conversation between plaintiff's attorney and the trial judge in chambers prior to voir dire included discussion about this issue. The discussion was not recorded and is not a part of the record. The exact question contemplated by plaintiff's attorney, therefore, is not preserved for review.

The appellant bears the burden of providing the appellate court with a record containing everything necessary for the determination of questions presented. *Farmers & Merchants Insurance Co. v. Colonga*, 736 S.W.2d 559, 569 (Mo.App.1987). The appellant has failed to provide a record of the question her attorney sought to ask veniremen during voir dire. Appellant's brief ambiguously presents the question her counsel sought to ask the venire. The question is presented three different ways in plaintiff's brief. The heading to point five states that she should have been able to ask "if there was any reason why the jury could not award the plaintiff $300,-000." In the first paragraph of the argument under this point, the appellant states that the "judge indicated that the plaintiff's attorney on voir dire could not ask the jurors whether the fact that the plaintiff sued for $300,000 would in any way prejudice the jurors in their determination of the issues in the case." In the second paragraph of the argument under point five, the appellant states that "Plaintiff's attorney was going to ask the jurors that, if the plaintiff proved that the defendants were at fault and if the plaintiff proved to their satisfaction that she was entitled to $300,000, whether there was any reason they would not [be] able to render a verdict against the defendant and in favor of the plaintiff in the amount of $300,000." Without a proper record of the proposed question, the issue is not preserved. Point five is denied.

■ As point six, Appellant Bussell claims the court erred by limiting plaintiff's attorney to thirty minutes for closing argument instead of granting forty minutes as requested. The amount of time granted the parties for closing argument is within the discretion of the trial court. *Henderson v. Jackson*, 526 S.W.2d 73, 74 (Mo.App.1975). Appellate courts will not

---

**3.** The question asked and to which the court sustained the objection was: "What did you observe on the premises when you came to this premises?"

disturb a trial court's decision permitting counsel a specified time limit within which to argue absent a clear abuse of the trial court's discretion. *Id.* In determining a reasonable time for closing arguments, the trial court considers the length of the trial, the number of witnesses, the number and complexity of the issues involved, and the competence and experience of the trial attorneys. *Id.*

The case presented was a four-day trial, during which ten witnesses testified, about relatively noncomplex events. Forty-five exhibits were introduced, none particularly complex, of which approximately thirteen were medical records about which testimony was not extensive. Expert testimony was not particularly detailed or complex. Both parties were granted thirty minutes within which to argue the case to the jury. The trial court did not abuse its discretion. Point six is denied.

The judgment is affirmed.

All concur.