**Sammie GREESON and Ruby Jean Greeson, Respondents,**

v.

**ACE PIPE CLEANING, INC., Appellant.**

**Nos. WD44159, WD44175.**

Missouri Court of Appeals,
Western District.

Feb. 18, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
March 31, 1992.

Application to Transfer Denied
June 30, 1992.

---

5. On April 30, 1990, Munnell terminated the Turley–Martin Agreement with Tamko as of     April 30, 1991.

Jack B. Robertson, Kansas City, for appellant Ace Pipe Clean, Inc.

George Lehnen, Robert M. Hill, Richmond, for respondents Greeson.

Before BERREY, P.J., and ULRICH and HANNA, JJ.

ULRICH, Judge.

Ace Pipe Cleaning, Inc., (Ace) appeals from that portion of the judgment awarding $60,000, entered in behalf of Sammie and Ruby Jean Greeson, husband and wife, following the adverse $60,000 jury verdict assessed for waste pursuant to § 537.420, RSMo 1986. Ace does not appeal that portion of the judgment awarding $20 to the Greesons for breach of contract. Ace contends that (1) the jury improperly awarded damages for depreciation in value to land not leased by Ace, (2) insufficient evidence was presented establishing the occurrence of waste, (3) the statute of limitations time-barred the Greesons' lawsuit, and (4) the entire judgment was improperly awarded to the Greesons who were, Ace claims, tenants in common of the affected real property. The Greesons appeal the trial judge's refusal to treble the verdict absent the jury finding that the waste to the property was wantonly committed. The judgment is modified in part. That portion of the jury verdict awarding $60,000 as damages for waste is trebled pursuant to § 537.420. The case is remanded with directions to enter judgment for waste in favor of the Greesons in the sum of $180,-000.

On June 18, 1975, Herbert Marble (now deceased) and Ruby Jean Marble (currently Ruby Jean Greeson) leased forty acres of land to Ace. The lease agreement permitted Ace to use the land as a liquid waste landfill. The lease provided that "[t]he leased premises shall be used solely for the construction and maintenance of a liquid waste landfill and for the treatment and disposition thereupon of liquid residential, commercial and industrial wastes of every kind." The lease restricted the use of the landfill by stating: "Regulatory compliances: Lessee shall carry on its activities on the leased premises in strict compliance with all applicable laws and regulations." As consideration for the lease, the lessor was to receive one dollar per year payable

in advance. Additionally, lessor was to receive $40.00 for each 3,200 gallon load of waste delivered to and deposited on the leased premises.

Ace used the leased property as a landfill from 1975 to 1979, paying the Marbles, and then the Greesons, a total of $57,220.00. Ace's state permit for the landfill was revoked by the Missouri Department of Natural Resources in November 1979, due to violations which occurred in the operation of the landfill. These violations included dumping waste material from unauthorized waste generators, dumping unauthorized hazardous waste, failing to maintain the landfill according to state regulatory safety standards, and failing to properly close the landfill. The Missouri Department of Natural Resources sent numerous letters to Ace outlining the problems associated with the landfill. However, Ace took minimal action to correct the situation, forcing closure of the landfill.

These violations were intentionally concealed from the Greesons by Ace's president. The Greesons filed an action against Ace soon after they discovered the problems associated with the landfill. The Greesons brought suit for breach of the lease and for waste to the leased property. After a two-day trial, the jury on October 30, 1990, returned a verdict awarding the Greesons $20.00 for breach of contract and $60,000 for waste to the Greesons' property. The trial judge refused to treble the damages for waste, citing the absence of a finding by the jury that the waste was wantonly committed.

### Ace's Appeal

Ace appeals the $60,000 judgment for waste. The Greesons contend that Ace has not preserved any issue for appellate review because Ace's motion for new trial was not timely filed. The jury returned its verdict on October 30, 1990. Rule 78.04, Missouri Rules of Civil Procedure, prescribes that "[a] motion for a new trial shall be filed not later than fifteen days after the entry of the judgment on a jury verdict, which judgment shall be entered as of the date of the verdict...." Therefore,

Ace had until November 14, 1990, in which to file its post-trial motion. A motion for new trial filed out of time preserves nothing for appellate review. *Bussell v. Leat,* 781 S.W.2d 97, 100 (Mo.App.1989).

Ace did not file its motion for new trial until November 28, 1990, twenty-nine days after October 30, the date the jury verdict was returned. Ace contends that the judgment was not entered until November 26, 1990, the date the trial judge issued and signed the formal judgment, which would make Ace's new trial motion timely. This argument is contrary to the rules of civil procedure and the holdings of the Missouri supreme court. Rule 78.04 specifically states that the judgment in a jury tried case "shall be entered as of the date of the verdict...." This language is mandatory, not permissive. The supreme court in *Mosher v. Levering Invs., Inc.,* 806 S.W.2d 675, 676 (Mo. banc 1991), held that "[t]he entry of a judgment on a jury verdict is a ministerial act and failure to formally enter the judgment does not affect the time requirements imposed by *Rule 78.04.*" The *Mosher* court concluded that "[w]hether a formal judgment was entered after ... [the date of the verdict] or not, the time for filing post-trial motions began to run on that date." *Id.* Therefore, Ace's post-trial motion filed on November 28 was untimely and preserved nothing for appellate review. *Id. See also Bussell,* 781 S.W.2d at 100.

The issues raised in Ace's untimely motion, and now on appeal, are reviewed for plain error. *Id.* The issues, except for the fourth, were initially presented by Ace's motions for directed verdict at the close of plaintiffs' evidence and at the close of all the evidence which were denied by the trial court. Rule 84.13 provides the standard of review when reviewing Ace's points on appeal. *Bussell,* 781 S.W.2d at 100. Rule 84.13(c) states: "Plain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."

Ace argues for its first point that the jury verdict improperly awarded dam-

ages for depreciation in value to land not leased by Ace. The Greesons owned eighty acres, of which forty acres were leased to Ace. The Greesons presented substantial evidence demonstrating the value of the leased forty acres. The Greesons' expert witness testified that the market value for the forty acres at the time the waste was being committed was $500 per acre. The record reflects that the leased forty acres included improvements to the land, including a house worth $50,000. These figures indicate the value of the leased forty acres exceeds the $60,000 jury verdict. The expert witness testified that the value of the property was now worthless due to the waste committed by Ace. Therefore, manifest injustice or a miscarriage of justice did not result in the jury's assessment of damages, and the jury's assessment of damages is not plain error. The first point is denied.

■ Ace next argues that the record is devoid of any evidence proving the deposit of unauthorized wastes upon the leased premises. The lease provides for "the construction and maintenance of a liquid waste landfill and for the treatment and disposition thereon of liquid residential, commercial and industrial wastes of every kind." Ace contends that this provision allows it to deposit any liquid wastes onto the property. However, this argument ignores paragraph six of the lease, which states that Ace "shall carry on its activities on the leased premises in strict compliance with all applicable laws and regulations." Ace's permit, issued by the State of Missouri, authorized the disposition of specific types of wastes from only two authorized waste generating companies. The record is replete with evidence that Ace failed to follow the applicable laws and regulations by accepting unauthorized waste from unauthorized waste generating companies, by not maintaining the landfill properly, and by not filing and implementing a closure plan until several years after Ace's permit had been revoked. These violations caused the Greesons' land to depreciate in value, constituting the waste to the property for which the jury assessed its verdict. Mani-

fest injustice did not result from the jury's verdict. The second point is denied.

■ Ace also contends that the trial court erred in entering the entire judgment for the Greesons because the Greesons, Ace avers, were tenants in common and, accordingly, each was entitled to only one-half of the amount awarded. Ace's premise is based on Mrs. Greeson's having owned the leased property with her former husband prior to his death. However, when her former husband died, Mrs. Greeson acquired total sole ownership of the property. When she subsequently married Mr. Greeson, she conveyed to him an undivided one-half interest in the property. Ace's position ignores the longstanding rule in Missouri that "a conveyance to husband and wife jointly is presumed to create a tenancy by the entirety...." *Ortmeyer v. Bruemmer*, 680 S.W.2d 384, 394 (Mo. App.1984). The record does not rebut this presumption. Therefore, the form of the judgment was proper. Manifest injustice or miscarriage of justice did not result from the form of the verdict. The third point is denied.

■ Ace's final argument is that the Greeson's lawsuit is barred by the expiration of the five year statute of limitations. § 516.120, RSMo Supp.1990. This argument fails to consider the actions taken by Ace's president to conceal from the Greesons the problems associated with the landfill. The concealment of a cause of action from a party who has a right to bring the action tolls the statute of limitations until the action is discovered or reasonably could be discovered by the owner of the cause of action. *State v. Wells*, 270 S.W.2d 857, 860 (Mo.1954). "Section 516.280 is statutory authority for the proposition that fraudulently concealing a cause of action tolls the statute of limitations." *Klippel v. Watkins*, 667 S.W.2d 28, 31 (Mo.App.1984) (citing § 516.280, RSMo 1986).

■ Ace's president fraudulently concealed from the Greesons the violations and activity which occurred at the landfill. The Missouri Department of Natural Resources revoked Ace's permit to deposit waste at the site because unauthorized waste depos-

its there were numerous. After the permit was revoked, the Missouri Department of Natural Resources instructed Ace in 1983 to submit a detailed engineering plan to close the site. Ace initiated commencement of the analysis and plan the week before trial, approximately six years later. Ace's president told the Greesons that the site was being terminated as a landfill because someone within the Department of Natural Resources was "mad at him." Ace's president misinformed the Greesons again by telling them that the required closure of the landfill, after the permit was revoked, was not being effectuated because the state, not Ace, was torpid. Ace intentionally deceived the Greesons and concealed from them violations and relevant activity at the landfill. The Greesons filed suit for waste shortly after discovering the truth about revocation of the license and Ace's failure to timely submit an analysis and closure plan for the site. Therefore, the statute of limitations had not expired, and Ace has failed to show resulting manifest injustice or the miscarriage of justice. Ace's last point is denied.

### Greeson's Appeal

■ The Greesons argue on appeal that the trial court erred by not trebling the damages awarded for waste pursuant to § 537.420. The trial judge refused to treble the damages because the jury did not find that Ace committed the waste "wantonly." The Greesons contend that § 537.-420 does not require the jury to find that Ace "wantonly" committed the waste, but rather the statute mandates the trebling of damages when waste has been committed by a life tenant or a tenant for years.

Section 537.420 prescribes:

If any tenant, for life or years, shall commit waste during his estate or term, of anything belonging to the tenement so held, without special license in writing so to do, he shall be subject to a civil action for such waste, and shall lose the thing wasted and pay treble the amount at which the waste shall be assessed.

This statute mandates the trebling of damages for waste when a tenant for life or years commits waste to the tenement. The statute does not expressly state that waste be committed "wantonly" before the damages are trebled. In contrast, § 537.490, RSMo 1986, requires that in an action for waste the jury must find that the actor wantonly committed the act in order to treble the jury's damage award. Section 537.490 states: "If in any action for waste, the jury find [sic] that the waste was wantonly committed, judgment shall be entered for three times the amount of the damages assessed." Ace proposes that § 537.420 and § 537.490 are to be applied in conjunction with the other, thereby necessitating the finding that Ace acted wantonly before the trial court could treble the damages assessed for waste. In support of its argument, Ace cites *Lustig v. U.M.C. Indus., Inc.,* 637 S.W.2d 55 (Mo.App.1982). However, *Lustig* is inapplicable to the appeal *sub judice.*

In *Lustig,* the plaintiff brought the action under both §§ 537.420 and 537.490, and alleged that the waste was wantonly committed. *Id.* at 57. The trial court examined § 537.490 and explained that the jury must conclude the defendant acted "wantonly" in all sixteen instances of waste. *Id.* at 58. "Damages that are the result of waste wantonly committed, and only those damages, can be trebled under § 537.490." *Id.* The opinion is silent as to the application of § 537.420. Therefore, *Lustig* is not controlling where, as in the present appeal, the landlord brings an action against a tenant for waste pursuant only to § 537.420.

Sections 537.420 and 537.490 are not identical and are intended to address different relationships between the parties and the land. Section 537.420 addresses the situation where parties have entered into a special relationship, a tenancy for life or years, and where the tenant commits waste to the tenement. Section 537.490 is applicable when a party commits waste to another party's property, wherein the parties have not entered into the special landlord-tenant relationship identified in § 537.420. The former situation, under § 537.420, requires a trebling of the damages assessed for waste without regard to whether the

waste was committed wantonly. The latter situation, under § 537.490, provides for trebling damages only when the actor commits the waste wantonly. Therefore, since the Greesons leased their property to Ace for a term of years and sought relief under § 537.420, the trial court was required to treble the damages the jury assessed for waste.

The judgment for the Greesons is modified in part. That portion of the jury verdict awarding $60,000 as damages for waste is trebled pursuant to § 537.420. The case is remanded with directions to enter judgment for waste in favor of the Greesons in the sum of $180,000.

All concur.