

# Missouri Court of Appeals

## Southern District

### Division One

| | | |
|---|---|---|
| TANEY COUNTY TITLE<br>& ESCROW, LLC, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | |
| | ) | |
| vs. | ) | No. SD36165 |
| | ) | Filed: April 23, 2020 |
| RICHARD JENSEN | ) | |
| and DJ JENSEN, | ) | |
| Husband and Wife, | ) | |
| | ) | |
| Defendants/Crossclaimants/Appellants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| KEVIN KNUDSEN, | ) | |
| and SHANNON KNUDSEN, | ) | |
| Husband and Wife, | ) | |
| | ) | |
| Defendants/Crossclaimants/Respondents. | ) | |

APPEAL FROM THE CIRCUIT COURT OF TANEY COUNTY

Honorable Jeffrey M. Merrell, Judge

**<u>AFFIRMED</u>**

Richard Jensen and DJ Jensen ("the Jensens") appeal from the trial court's "Order and

Judgment of the Court," where the trial court entered judgment in favor of Kevin Knudsen and

Shannon Knudsen ("the Knudsens") on the Jensens' amended crossclaim against the Knudsens for breach of contract and waste.[1]  Finding no merit to the Jensens' four points relied on, we deny the same and affirm the judgment of the trial court.

## Facts and Procedural History

We recite the evidence in accord with the principle that the trial court can believe some, all, or none of the evidence, and that our standard of review requires us to view the evidence in the light most favorable to the trial court's judgment.  **Bramer v. Abston**, 553 S.W.3d 872, 879 (Mo.App. S.D. 2018).  We recite other material as necessary for context.

On December 12, 2007, the parties entered into a Contract for Deed (the "Contract"), whereby the Jensens would sell their house—located at 127 Western Avenue, in Branson, Missouri (the "Property")—to the Knudsens for the sale price of $505,000.  The Jensens agreed to finance the purchase price until the Knudsens could secure financing.  The Contract also required the Knudsens to pay the Jensens (in addition to the "purchase price") $25,000 at closing, consisting of $5,000 in prepaid interest, $15,000 for points on the loan, and $5,000 as a down payment.

In pertinent part, the Contract provided that:

> 2.B.   . . . . The promissory note shall further provide that if default is made in any installment payment and such default continues for a period of ten days, then and in that event the holders of said note shall have the right to declare the unpaid balance immediately due and payable and if payment of the unpaid balance is not made within 10 days thereafter, then and in that event Sellers shall have the right to cancel

---

[1] The Knudsens did not file a brief.  Counsel for Knudsens filed a motion to withdraw on March 11, 2020, representing that the Knudsens "have determined that it is unnecessary for them to file a Respondent's brief in this case[,]" and directing this Court to their trial brief (which is part of the legal file).  While there is no requirement that respondents to an appeal file a brief, and no penalty associated with such omission, we are left to adjudicate the issues presented without the benefit of any argument the Knudsens may have asserted.  *See* **Erskine v. Dir. of Revenue**, 428 S.W.3d 789, 790 n.1 (Mo.App. S.D. 2014).  We observe the salient commentary of Judge Lamm on this issue—though precatory here, representing sound considerations for respondent counsel evaluating whether to file a brief on appeal: "Respondents . . . file no brief.  Why so?  The court was open.  The rules invited them.  We sit to *hear*, and then decide, whereby due process of law is accorded agreeably to the law of the land. . . .  In De Paige v. Douglas, 234 Mo. loc. cit. 81, 136 S.W.345 [(Mo. 1911)], we had occasion to comment on the unwisdom of that course."  **Lee v. Lee**, 258 Mo. 599, 167 S.W. 1030, 1035 (Mo. 1914) (emphasis in original).

> this contract and retain all sums paid on the purchase price. In the event default be made in the payment of said promissory note in the amount of $500,000.00 [sic].

The Jensens executed a warranty deed in favor of the Knudsens on December 26, 2007. The same day, the Knudsens executed a quit claim deed in favor of the Jensens. These deeds were delivered to Taney County Title & Escrow, LLC ("Escrow Agent"), to be held in escrow. The Contract provided that in the event the Knudsens defaulted in the payment of the Note,

> or Buyer defaults in his performance of any other obligation on his part to be performed and Sellers elect to declare this agreement null and void, the Escrow Agent shall deliver to Sellers the warranty deed and quit claim deed and Sellers shall be authorized to record the quit claim deed.

On December 26, 2007, the Knudsens also executed a Promissory Note ("the Note") in the principal amount of $500,000, at five percent interest. The Note required the Knudsens to begin paying $2,500 per month on March 1, 2008; $3,000 per month beginning March 1, 2009; and $3,500 per month beginning March 1, 2010, until March 1, 2013, at which time the remaining balance on the Note would be due in full. The Note also provided that:

> If default be made in the payment of any said monthly installment when due and such default continues for a period of ten (10) days thereafter, the holders of this note may, at their option, declare all unpaid indebtedness evidenced by this note immediately due and payable within ten (10) days thereafter, and thereupon the undersigned agree to pay all costs of collection including reasonable attorney's fee. Any default which continues for a period of more than ten (10) days shall be assessed a late fee of Twenty-Five Dollars ($25.00) per day. Failure at any time to exercise such option shall not constitute a waiver of the right to exercise it later.

The Knudsens were consistently late in making monthly payments. The Knudsens were required to begin making payments of $3,000 per month on March 1, 2009, but were unable to begin doing so until August 2009. On April 26, 2010, the Jensens sent a letter to the Knudsens "encouraging [them] to keep the payments up so [they] wouldn't be late[.] The letter also

3

purported to state that the Jensens had "designed this agreement for the [Knudsens] to build equity."[2]

The Knudsens attempted to refinance the loan, as required by the Note, but were unsuccessful in part due to a January 27, 2014 appraisal valuing the Property at $340,000 (the balance of the Note on March 1, 2013, was approximately $401,000). The Knudsens received a loan offer for $330,000, and an offer from the Jensens to finance the difference between the bank loan and the balance of the Note, but they did not refinance.

On April 15, 2014, a second letter was sent to the Knudsens advising that they were in default of the Note and the total balance due and owing was $401,000. In the letter, the Jensens claimed that the low appraisal on the Property was due to the Knudsens' failure to maintain the Property as evidenced by the appraiser's comments that 20 items needed repair, and that these repairs were "typical deferred maintenance." The letter concluded that the Knudsens were "technically in default" and the Jensens "could take back the house; and you'd still have to pay the balance."[3]

---

[2] This letter was entered in evidence as Exhibit 103, and Richard Jensen testified to its content at trial. Exhibit 103 was not deposited with this Court as part of the record on appeal. As a result, we are not in possession of that exhibit, and cannot properly consider it for purposes of our review. Accordingly, we only reference Richard Jensens' testimony at trial. The other 20 exhibits entered in evidence at trial were also not deposited with this Court, as allowed by Missouri Court Rule 30.05 and Rule 4 of the Southern District Special Rules. When an exhibit is omitted from the record on appeal and is not deposited with the appellate court, "its intendment and content will be taken as favorable to the trial court's ruling and as unfavorable to the appellant." *State v. Hawkins*, 328 S.W.3d 799, 810 n.3 (Mo.App. S.D. 2010) (internal quotation and citation omitted).

All rule references are to Missouri Court Rules (2019).

[3] This letter was entered into evidence as Exhibit 104, and was (like other exhibits) not deposited with this Court. This Court relies on Richard Jensens' testimony at trial for purposes of Exhibit 104 and its impact.

4

The Knudsens vacated the Property in 2014, but leased the Property to friends until October 2016. The Property then sat vacant, and the Knudsens made no further payments after September 2016. As of October 1, 2016, the Jensens claimed the Knudsens had paid a total of $367,000, purportedly leaving a balance due on the Note of $112,510.09.

On December 22, 2016, a third letter was sent to the Knudsens notifying them they were in default, and that the March 2, 2013 balloon payment was still due and owing.

On March 30, 2017, the Jensens' attorney requested that the Knudsens return the keys to the Property by leaving the keys with a local realtor, which they did.

Thereafter, the Jensens attempted to sell the Property, but received no serious offers. The Jensens asserted they expended $41,544.89 in necessary repairs to the Property due to the Knudsens failure to maintain it, including a drainage problem in the backyard affecting the in-ground swimming pool. Kevin Knudsen asserted he and his wife also made improvements to the Property, including addressing the drainage problem in the backyard, which existed at the time they purchased the Property.

The Jensens ultimately found a buyer for the Property, but Escrow Agent required the Jensens to clear up title to the Property by having the Knudsens release the existing 2007 quit claim deed and sign a new quit claim deed. Thereafter, the Jensens asked the Knudsens to release the quit claim deed and to sign a new deed. After consulting their attorney, the Knudsens advised the Jensens they would not release or execute a new quit claim deed unless they were released from all financial obligations to the Jensens regarding the Property.

On May 24, 2018, the Jensens requested that Escrow Agent deliver the deeds to them, but Escrow Agent refused, citing concerns of possible legal repercussions by the Knudsens. Instead, on May 31, 2018, Escrow Agent filed an "Interpleader Petition," requesting the trial court require

5

the Jensens and the Knudsens to submit to the trial court their individual rights to the deeds. The Jensens filed their answer, including a three-count crossclaim against the Knudsens for breach of contract (Count I), quiet title (Count II), and negligence (Count III). The Knudsens filed an answer and a counterclaim against the Jensens for the value conferred upon the Jensens in excess of the amount contracted for by the parties. The Jensens also filed a "Motion for a Temporary Restraining Order, Preliminary and Permanent Injunctive Relief" seeking a "preliminary and permanent mandatory injunction" ordering Escrow Agent to deliver the deeds to the Jensens.

On June 4, 2018, by order of the trial court, Escrow Agent deposited the relevant deeds with the Taney County Clerk's office. Escrow Agent then filed a "Motion for Discharge of Interpleader." On July 15, 2018, after hearing argument, the trial court discharged Escrow Agent from any further liability and duties under the Contract.

On August 3, 2018, an "Interlocutory Judgment" was entered wherein the title to the Property was quieted in favor of the Jensens, with the Knudsens' agreement that the Jensens could sell the Property to a third party. The trial court terminated any ownership rights the Knudsens may have had to the Property under the Contract. The trial court further found that the only remaining issues between the parties were the claims for monetary damages. The Jensens were able to close on the sale of the Property for $327,022.

On September 5, 2018, the Jensens filed a "First Amended Crossclaim." The Jensens sought the unpaid balance of the Note, unpaid interest, late fees, prejudgment interest, and damages, in the total amount of $234,863.48, plus attorney fees.

A bench trial commenced on April 3, 2019, where Richard Jensen and Kevin Knudsen testified. Testimony and evidence was adduced regarding the facts and circumstances leading up

to the cancellation of the Contract, and the ultimate cancellation itself.[4]  Richard Jensen admitted that "at the end of the day, [we] got the warranty deed, [we] got the quit claim deed, . . . and [we] got the [Property]"; and that there was nothing in the Contract or the Note that provided the Jensens could regain possession of the Property, *as well as* collect the unpaid balance on the Note.

On May 1, 2019, the trial court entered its "Order and Judgment of the Court" finding in favor of the Knudsens on their crossclaim.  The trial court found in relevant part:

1.	The Contract for Deed (Jensens' Exhibit 1) and Promissory Note (Jensens' Exhibits 2 and 2a) in question were negotiated and made between the parties whereby Jensens would sell a home located at 127 Western Avenue, in Branson, Taney County, Missouri, to the Knudsens.  This agreement was entered into in late 2007 - at, or near, the peak values of the U.S. real estate market.  This may have worked to the detriment of the Knudsens, but was not due to any malicious intent on the part of the Jensens.

2.	The Knudsens defaulted on the Contract for Deed and Promissory Note, permitting the Jensens to elect to cancel the contract and take immediate possession of said premises.  The Jensens did elect to cancel the contract and requested the release of the previously executed quitclaim deed held in escrow by Plaintiff Taney County Title & Escrow, LLC.  Knudsens objected to Plaintiff releasing said quitclaim deed, prompting Plaintiff to file its Interpleader Petition, on or about May 31, 2018.  On August 3, 2018, and [sic] Interlocutory Judgment was entered in the Circuit Court of Taney County, in this case, returning ownership of said premises to Jensens.

3.	Pursuant to the parties' negotiated Contract for Deed, the Jensens elected to cancel the agreement and to "retain all sums paid on the purchase price" by the Knudsens (Exhibit 1, paragraph 2B). The Jensens then sold said premises to another buyer.

---

[4] Richard Jensen testified to that issue as follows:

Q	You declared – we've already seen . . . Exhibit 6[,] [the December 22, 2016 letter], when you declared that [the Knudsens were] in default, right?
A	Yes.
Q	And you elected to take the house back, correct?
A	Yes.
Q	And declare this agreement null and void, what does that term mean to you?
A	That [the Knudsens] failed on the contract, defaulted on it.  And we took back the house, and then tried to sell it[.]
Q	And under paragraph eight of [the Contract,] you elected to declare it null and void and take the house back, right?
A	Yes.

7

4. In Count I, the Jensens seek to collect from the Knudsens the remaining money due under the parties' negotiated Promissory Note. The Jensens proposed the Contract for Deed and Promissory Note transaction that occurred between the Jensens and the Knudsens, and Mrs. Jensen is a licensed Realtor in both Missouri and Kansas. In said Contract for Deed, there is a clause setting-forth that- [sic] in the event of default by the Knudsens - the Jensens will be able to declare the contract cancelled and "retain all sums paid on the purchase price." This is customary in Contract for Deed scenarios, and has been upheld and enforced by Missouri's Courts. What is also customary in a scenario where seller cancels the contract upon buyer's default, is that seller forfeits his/her right to collect unpaid sums under the Promissory Note. In the case before this Court, neither the Jensens nor the Knudsens included language in the Contract for Deed that put the Knudsens on notice that the Jensens might be able to both cancel the contract and retain all sums paid on the purchase price, *and* also seek to collect the full value of the Promissory Note. Similarly, neither party included that language putting a trier-of-fact on notice that it was the intention of the parties at the time of the creation or execution of the Contract for Deed that the Jensens would be able to both cancel the contract and retain all sums paid on the purchase price, *as well as* seek to collect the full value of the Promissory Note. Therefore, this Court finds that the Jensens can enjoy the benefit of the express terms of their Contract for Deed by retaining all sums paid by the Knudsens on the purchase price, but the Jensens will not be permitted to also receive the full value of the terms of their Promissory Note. In Count I of Jensens' Crossclaim against the Knudsens, the Court finds in favor of the Knudsens.

5. In Count II, the Jensens seek judgment for damages against the Knudsens for waste. Claims for waste may succeed against any tenant for life, or a term of years. In the case before this Court, the Knudsens were purchasers of the property and held an equitable interest. The Knudsens were not tenants. Therefore Jensens' claim for waste must fail. In Count II of Jensens' Crossclaim against the Knudsens, the Court finds in favor of the Knudsens.

6. Both parties have made claims under the Count I for their respective attorney's fees. Because the Knudsens prevail against the Jensens in Count I of Jensens' Petition, the Court has considered the Knudsens' claim for attorney's fees. The Court denies Knudsens' claim for attorney's fees, because - according to the evidence presented in trial - the Knudsens initially refused to allow Plaintiff Taney County Title & Escrow, LLC, to release the quitclaim deed to the premises that was being held in escrow by Plaintiff. Although the quitclaim deed was released prior to the trial on Counts I and II of the Jensens' Crossclaim, the Knudsens' initial refusal to consent to the release of the quitclaim deed necessitated the Plaintiffs filing

8

of this case. The Court finds it would be unjust to award either party their respective attorney's fees.

(Emphasis in original). This appeal followed.

In four points relied, the Jensens assert the trial court erred in:

> **First Point Relied On.** The trial court erred in granting judgment for Respondents, because the trial court erroneously granted judgment on an unpled affirmative defense, in that Respondents failed to raise termination/cancellation of the contract as an affirmative defense, which is a mandatory affirmative defense in a deficiency action concerning a contract for deed.

> **Second Point Relied On.** The trial court erred in granting judgment for Respondents, because the trial court, despite the fact that the parties' agreements were fully integrated, impermissibly rewrote the Contract for Deed and limited Appellants' remedies, in that neither the Contract for Deed nor the Promissory Note, which are fully integrated agreements, limit Appellants' recovery to retaining Respondents' prior Promissory Note payments as liquidated damages and reclaiming the Property.

> **Third Point Relied On.** The trial court erred in granting judgment for Respondents, because the trial court improperly relied on non-existent Contract for Deed provisions, in that even if such phantom provisions existed, Respondents repudiated the Contract for Deed when they abandoned the House and waived any rights to enforce the agreement.

> **Fourth Point Relied On.** The trial court erred in ruling for Respondents on Appellants' claim for waste, because the trial court misapplied the law concerning recovery for waste, in that damages for waste are available when the defendant has less than the fee simple title to property and Respondents had only an equitable interest in the Property.

## Standard of Review

In a bench-tried case, we will affirm the judgment of the trial court unless appellant demonstrates that the trial court's judgment is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

> When evidence is contested by disputing a fact in any manner, this Court defers to the trial court's determination of credibility. A trial court is free to disbelieve any, all, or none of that evidence. Appellate courts defer to the trial court

9

on factual issues because it is in a better position not only to judge the credibility of witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record. The appellate court's role is not to re-evaluate testimony through its own perspective.

***White v. Dir. of Revenue***, 321 S.W.3d 298, 308–09 (Mo. banc 2010) (internal quotations and citations omitted). We will affirm "the trial court's judgment . . . on any basis supported by the record." ***Nail v. Husch Blackwell Sanders***, **LLP**, 436 S.W.3d 556, 561 (Mo. banc 2014).[5]

## Analysis

### *Points I, II & III*

The Jensens' first, second, and third points all challenge the trial court's rejection of their deficiency claim. All three arguments share the same dispositive flaw—as such, we combine these points for ease of analysis.

The Jensens' first point claims that the trial court erred in rejecting their deficiency claim because the Knudsens "failed to raise termination/cancellation of the contract as an affirmative defense," and that such affirmative defense was therefore waived. We are not persuaded.

The trial court made the following findings (as relevant here):

2. The Knudsens defaulted on the Contract for Deed and Promissory Note, permitting the Jensens to elect to cancel the contract and take immediate possession of said premises. The Jensens did elect to cancel the contract and requested the release of the previously executed quitclaim deed held in escrow by Plaintiff Taney County Title & Escrow, LLC. Knudsens objected to Plaintiff releasing said quitclaim deed, prompting Plaintiff to file its Interpleader Petition, on or about May 31, 2018. On August 3, 2018, and [sic] interlocutory Judgment was entered in the Circuit Court of Taney County, in this case, returning ownership of said premises to Jensens.

3. Pursuant to the parties' negotiated Contract for Deed, the Jensens elected to cancel the agreement and to "retain all sums paid on the purchase price" by the Knudsens . . . . The Jensens then sold said premises to another buyer.

---

[5] The "inherent power of the circuit court [is] to adjust equities between the parties without rigid adherence to any form and may shape the remedy to meet the demands of justice." ***Ryan v. Spiegelhalter***, 64 S.W.3d 302, 306 (Mo. banc 2002) (treating challenge to an alleged breach of contract for deed).

10

4.  . . . . In the case before this Court, neither the Jensens nor the Knudsens included language in the Contract for Deed that put the Knudsens on notice that the Jensens might be able to both cancel the contract and retain all sums paid on the purchase price, *and* also seek to collect the full value of the Promissory Note. Similarly, neither party included that language putting a trier-of-fact on notice that it was the intention of the parties at the time of the creation or execution of the Contract for Deed that the Jensens would be able to both cancel the contract and retain all sums paid on the purchase price, *as well as* seek to collect the full value of the Promissory Note.

(Emphasis in original).

"The burden of proof rests with the party claiming breach of contract." ***Scheck Indus. Corp. v. Tarlton Corp.***, 435 S.W.3d 705, 723 (Mo.App. E.D. 2014).[6] As such, the Jensens had the burden to "establish the existence of a contract, the ***rights and obligations imposed by the contract***, a breach, and ***damages***." ***Id.*** (emphasis added). The Jensens bore the burden of production and persuasion as to these issues, including their alleged entitlement to a deficiency award. "The burden of production is a party's duty to introduce enough evidence on an issue to have the issue decided by the fact-finder[.]" ***White***, 321 S.W.3d at 304 (internal quotation and citation omitted). "The burden of persuasion is defined as a party's duty to convince the fact-finder to view the facts in a way that favors that party." ***Id.*** at 305 (internal quotation and citation omitted).

By contrast, "[a]n affirmative defense is a procedural tool that allows the defendant to defeat or avoid the plaintiff's cause of action"; it has the effect of "aver[ing] that even if the allegations of the petition are taken as true, the plaintiff cannot prevail because there are *additional facts that permit the defendant to avoid the legal responsibility alleged*." ***Morris Branson***

---

[6] We observe that the Jensens' "First Amended CrossClaim Against Defendants Kevin Knudsen and Shannon Knudsen" does not request damages specifically directed at the full amount of the purchase price—rather, the pleading merely requests "damages in an amount to be determined at trial, for attorney's fees, for interest, for costs incurred, and for such other and further relief that the Court deems just and proper." To that extent, it is not clear that the Knudsens would have been put on notice by the Jensens' pleading that the potential affirmative defense of "termination/cancellation" was applicable or necessary.

11

*Theatre, LLC v. Cindy Lee, LLC*, 521 S.W.3d 278, 282 (Mo.App. S.D. 2017) (internal quotations and citations omitted) (emphasis in original).

The Jensens premise their challenge on the Knudsens' alleged failure to plead and preserve the defense of "termination/cancellation," and direct us to the following language from our recent opinion in *Percy's High Performance, Inc. v. Krough*, 445 S.W.3d 577, 582 (Mo.App. S.D. 2013): "cancellation or termination of a contract is an affirmative defense in an action for breach of contract. Defendants carry the burden of proof on all affirmative defenses." *Id.* (internal quotation and citation omitted).

This line of argument is unavailing. *Percy* does not, as the Jensens' argument implies, stand for the proposition that the *potential* existence of an affirmative defense—belonging to the Knudsens (the defending party)—would relieve the Jensens (the moving party) of their positive burden of proof, and shift it to the Knudsens as a negative burden of proof. By definition, the party asserting an affirmative defense depends on facts "***additional***" to those claimed by the adverse petitioner. *Morris*, 521 S.W.3d at 282. The Jensens had the burden of proving their own case (and they could lose by failing in either their burden of production or persuasion); a successful affirmative defense by the Knudsens *could* have still defeated their claim, but the *absence* of such defense would not independently satisfy the Jensens' burden—again, this manner of affirmative defense refers to facts ***additional*** to those necessarily claimed by the Jensens. *See id.*; *White*, 321 S.W.3d at 304–05.

In substance, the trial court found that the Jensens failed to meet their burden of proof as to their right to a deficiency award against the Knudsens. More specifically, the trial court found that the Contract (relied on by the Jensens in meeting their burden of proof on this issue) did ***not*** contain language granting the Jensens the right to a deficiency award. The Jensens' allegation as

to an unalleged affirmative defense was moot at the time the trial court entered its judgment below, and is unavailing on appeal. Point I is denied.

In the Jensens' second point, they argue:

The trial court erred in granting judgment for Respondents, because the trial court, despite the fact that the parties' agreements were fully integrated, impermissibly rewrote the Contract for Deed and limited Appellants' remedies, in that neither the Contract for Deed nor the Promissory Note, which are fully integrated agreements, limit Appellants' recovery to retaining Respondents' prior Promissory Note payments as liquidated damages and reclaiming the Property.

We are not persuaded. If anything, it is the Jensens' interpretation that would require rewriting in derogation of the fully integrated contract. The Jensens claim in their brief that "[t]he Contract is clear: Appellants are entitled to receive full repayment of the Note, including Respondents' prior payments and the unpaid balance." The relevant language in the Contract, on which the Jensens' argument exclusively relies, states as follows:

The promissory note shall further provide that if default is made in any installment payment and such default continues for a period of ten days, then and in that event the holders of said note shall have the right to declare the unpaid balance immediately due and payable and if payment of the unpaid balance is not made within 10 days thereafter, then and in that event Sellers shall have **the right to cancel this contract** and _**retain**_ **all sums** _**paid**_ **on the purchase price**. In the event default be made in the payment of said promissory note in the amount of $500,000.00 [sic].

(Emphasis added). Quite simply, this language in no way supports the Jensens' argument—rather, it clearly indicates that the Jensens' remedy was to cancel the Contract, and to keep the money _already paid_ by the Knudsens _at that time_. While the Jensens' argument tries numerous roundabout tacks in this vein, boiled down, they are all directed at this same unavailing premise. Further substantive treatment would serve no useful purpose, and we therefore simply reject this line of argument. The Jensens fail to demonstrate reversible error on this basis in their Point II, and it is accordingly denied.

13

In their third point, the Jensens make the following argument:

The trial court erred in granting judgment for Respondents, because the trial court improperly relied on non-existent Contract for Deed provisions, in that even if such phantom provisions existed, Respondents repudiated the Contract for Deed when they abandoned the House and waived any rights to enforce the agreement.

In support, the Jensens suggest that the trial court committed reversible error in denying their claim for a deficiency award in that "the Contract did not limit or preclude [the Jensens'] claim for deficiency." Substantively, this reflects yet another attempt to dress the same unavailing premise rejected in our discussion of the Jensens' first and second points. The Jensens do not provide (or attempt to provide) any authority standing for the unarticulated proposition actually underpinning their argument—*i.e.*, that a seller's right to a deficiency award should be "read into" all contract for deed agreements, even where the terms agreed to by the parties do not grant that remedy.[7]

The Jensens also attempt to argue that the Knudsens abandoned the Contract, and how we should interpret such factual matter as warranting reversal in favor of the Jensens. While the Jensens fail to accurately designate such in their third point (or argument therein),[8] this (apparently) reflects an attempt to lodge one or more evidentiary challenges on appeal. These manner of challenges are governed by **Houston v. Crider**, 317 S.W.3d 178 (Mo.App. S.D. 2010):

A not-supported-by-substantial-evidence challenge requires completion of three sequential steps:

(1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;

(2) identify all of the favorable evidence in the record supporting the existence of that proposition; and,

---

[7] To be clear, our recitation in this instance should not be read as an endorsement thereof.

[8] *See* Missouri Court Rules 84.04(c)&(d) (2019).

14

(3) demonstrate why that favorable evidence, when considered along with the reasonable inferences drawn from that evidence, does not have probative force upon the proposition such that the trier of fact could not reasonably decide the existence of the proposition.

On the other hand, an against-the-weight-of-the-evidence challenge requires completion of four sequential steps:

(1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;

(2) identify all of the favorable evidence in the record supporting the existence of that proposition;

(3) identify the evidence in the record contrary to the belief of that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit; and,

(4) demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition.

*Id.* at 187. The Jensens' argument does not attempt (or succeed) at conforming to *Houston*'s mandatory requirements, rendering the substantive remainder of the Jensens' argument in Point III (errantly premised on our acceptance of this evidentiary supposition) "analytically useless and provid[ing] no support for [their] challenge[.]" *O'Gorman & Sandroni, P.C. v. Dodson*, 478 S.W.3d 539, 544 (Mo.App. E.D. 2015) (internal quotation and citation omitted).

The Jensens fail to demonstrate reversible error in their Point III, and it is accordingly denied.

### Point IV: Jensens' Claim for Waste

In the Jensens' fourth point, they argue:

The trial court erred in ruling for Respondents on Appellants' claim for waste, because the trial court misapplied the law concerning recovery for waste, in that damages for waste are available when the defendant has less than the fee simple title to property and Respondents had only an equitable interest in the Property.

15

The trial court's findings as relevant to this claim are as follows:

In Count II, the Jensens seek judgment for damages against the Knudsens for waste. Claims for waste may succeed against any tenant for life, or a term of years. In the case before this Court, the Knudsens were purchasers of the property and held an equitable interest. The Knudsens were not tenants. Therefore Jensens' claim for waste must fail. In Count II of Jensens' Crossclaim against the Knudsens, the Court finds in favor of the Knudsens.

Neither in their briefing before the trial court, nor in their instant brief on appeal, do the Jensens provide authority that waste is an available cause of action *in Missouri* under the instant circumstances (*i.e.*, a claim for breach of contract for deed). In their brief, the Jensens attempt to demonstrate the applicable contours of Missouri law by directing this Court to a 1969 Arizona case, a 1954 Fifth Circuit Court of Appeals case, a 1989 North Dakota case, and a 2013 Vermont case. The Vermont case—***Prue v. Royer***, 193 Vt. 267, 67 A.3d 895, 914 (Vt. 2013)—is (perhaps) closest to applicable, in the respect that the Jensens make reference to ***Prue***'s reliance on ***Lustig v. U.M.C. Industries, Inc.***, 637 S.W.2d 55, 58 (Mo.App. E.D. 1982).[9]

However, ***Lustig*** is not applicable to the dispositive issue here, and yields no support to the Jensens' argument. No Missouri appellate court has relied on ***Lustig*** for the principle that waste is an available cause of action (as here) in an action for breach of contract for deed, and none of the non-Missouri cases have ever been cited or relied upon by any Missouri court (appellate or otherwise). "Quite simply, [the Jensens'] argument fails to demonstrate that the trial court erroneously applied ***Missouri law*** such as to prejudice [the Jensens]. It was [the Jensens'] burden as appellant[s] to so demonstrate, and such burden will not be assumed by the reviewing court."[10]

---

[9] "'The proper measure of damages in an action for waste is the difference in value of the freehold estate or inheritance before and after the waste.'" ***Prue***, 67 A.3d 895 at 914 (quoting ***Lustig***, 637 S.W.2d at 58).

[10] We discern at least some statutory treatment on this issue—however, there is no mention (much less analysis) of such authority in the Jensens' brief. *See, e.g.*, § 537.430 ("The action may be maintained by one who has the remainder or reversion in fee simple, after an intervening estate for life or years, and also by one who has a remainder or reversion for life or years only; and each of them shall recover such damages as it shall appear that he has suffered by the waste

*Pennington v. Vonier*, 589 S.W.3d 734, 739 (Mo.App. S.D. 2019).  "[I]t is an appellant's burden to dislodge us from the presumption that the outcome below was correct."  ***Bramer***, 553 S.W.3d at 879 (internal quotation and citation omitted).  The Jensens' Point IV is denied.

The judgment of the trial court is affirmed.

WILLIAM W. FRANCIS, JR., J. – OPINION AUTHOR

GARY W. LYNCH, P.J. – CONCURS

NANCY STEFFEN RAHMEYER, J. – CONCURS

---

complained of."); § 537.510 ("An action for waste may be brought against the representatives of a tenant, or, if instituted in the lifetime of the tenant, it may be revived against his representatives after his death."); § 537.450 ("If a tenant of land commit any waste thereon after he has aliened it while he remains in possession, he shall be liable to the party injured for damages."); § 537.500 ("If the tenant in possession of any land shall, pending a suit to recover or charge said land, commit any waste thereon, the court in which the suit may be pending may order a receiver to take possession of the land.").  All references to statutes are to RSMo 2000, unless otherwise indicated.